# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: July 02, 2021

Ms. Rebecca Jane Bennett
Ms. Monica Levine Lacks
Ogletree, Deakins, Nash, Smoak & Stewart
127 Public Square, Suite 4100
Cleveland, OH 44114

Mr. Matthew Gilbert Bruce
The Spitz Law Firm
11260 Chester Road, Suite 825
Cincinnati, OH 45246

Ms. Anne Noel Occhialino
U.S. Equal Employment Opportunity Commission
Office of General Counsel
131 M Street, N.E., Fifth Floor
Washington, DC 20507

Mr. Brian D. Spitz
Spitz Law Firm, 25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122

> Re: Case Nos. 20-3519/20-3553, *Hannah Corbin v. Steak 'n Shake, Inc.*
> Originating Case No. : 2:17-cv-01043

Dear Counsel,

The Court issued the enclosed opinion today in these cases.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0312n.06

Case Nos. 20-3519/3553

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HANNAH CORBIN, | ) | |
|     Plaintiff-Appellee/Cross-Appellant, | ) ) ) | FILED<br>Jul 02, 2021<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| STEAK 'N SHAKE, INC., | ) ) | |
|     Defendant-Appellant/Cross-Appellee. | ) ) | |

BEFORE: SUTTON, Chief Judge; McKEAGUE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. Hannah Corbin was a minor who worked as a server at a Steak 'n Shake restaurant. Corbin filed suit for sexual harassment, alleging a hostile work environment, gender discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and Ohio law. After a five-day trial, the jury returned a verdict for Corbin on the hostile work environment claim, and awarded her $308 in back pay, $1000 in compensatory damages, and $50,000 in punitive damages. The jury ruled in favor of Steak 'n Shake on the gender discrimination claim. Steak 'n Shake appeals the district court's evidentiary rulings and the jury's award of punitive damages. Corbin cross-appeals, arguing that the district court erred in granting summary judgment to Steak 'n Shake on the Title VII claim of retaliation, and that it miscalculated the attorney's fees. For the reasons set forth below, we **AFFIRM** the district court's evidentiary rulings and the jury's award of punitive damages to Corbin. We furthermore **AFFIRM**

the district court's award of attorney's fees and grant of summary judgment to Steak 'n Shake on the retaliation claim.

I.

Hannah Corbin was seventeen years old when she started working as a server at Steak 'n Shake, in Newark, Ohio, in July 2015. Steak 'n Shake is a chain of restaurants serving fast food across the United States.

In January 2016, Maddie Dean, Corbin's friend from school, began working as a server at the same Steak 'n Shake location as Corbin. Because Dean did not have a car, Corbin and Dean would ride to work together and try to work the same shifts. When Dean first started working, Corbin warned her that she may hear inappropriate comments from the "man-boys," a phrase used to describe men "who act like boys" at work. Like Corbin, Dean also alleged that co-workers, including Bubba Travis, harassed her.

In March 2016, Dean alleged that Will McCann, her co-worker, groped Dean in the walk-in freezer of the restaurant. Dean then told her mother about this incident. Dean's mother reported the complaint to Mark Simon, the General Manager of the Newark branch. During the same month, Corbin indicated that she wanted to be taken off the schedule, but that she would pick up shifts occasionally. Based on this request, Simon removed Corbin from the system.

When Corbin came to work a shift that she picked up from another employee, on April 2, 2016, she was not able to clock in due to her change of employment status. An altercation ensued between Corbin and Brandi Genzen, another employee, which resulted in Corbin calling her mother for help in resolving the conflict. When Corbin's mother arrived, Corbin told Genzen that she was sexually harassed by McCann, who happened to be Genzen's son. Corbin left and told

Simon that she would not be coming back to work. It was only after this meeting that Simon first reported Corbin's sexual harassment complaint to his District Manager and to Human Resources.

Human Resources launched an investigation, interviewing many of Corbin's co-workers about the allegations. McCann denied any wrongdoing, and Human Resources was not able to verify the veracity of the allegations. Separately, Simon gave Genzen a notice of corrective action due to the altercation with Corbin, but both McCann and Genzen continued to work at Steak 'n Shake.

In December 2016, Dean's mother responded to a Facebook post about Steak 'n Shake's undercooked chicken, stating that "the girls go through more than just serving raw chicken[.]" The comment got flagged by Steak 'n Shake's Human Resources Manager, Kelly Seikel, who contacted Dean's mother about the allegations. Seikel interviewed McCann and Dean, and McCann denied touching Dean. Seikel also asked McCann about earlier allegations of harassing Corbin. McCann again denied any wrongdoing, signed a statement saying he would interact in a professional manner when working with Dean, and was permitted to return to work.

On November 30, 2017, Corbin brought suit against Steak 'n Shake and Simon for hostile work environment, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 and Ohio law.

Steak 'n Shake moved for summary judgment. The district court denied summary judgment as to the hostile work environment and gender discrimination claims, and granted summary judgment as to the retaliation claim. Prior to trial, Steak 'n Shake filed a motion in limine to exclude allegations of harassment by Dean, who was not a party to the lawsuit. Steak 'n Shake argued that the testimony was not probative and was highly prejudicial. Corbin argued that the testimony was useful to describe the "totality of the circumstances" and the "hostility of [] the

[work] environment," and was not unduly prejudicial. During trial, the district court conducted voir dire of Dean to determine admissibility of her testimony. During the voir dire, the judge asked Dean if she ever told Corbin about the walk-in freezer incident; Dean replied, "I told Hannah about it, yes." The district court concluded that the testimony was admissible and allowed Dean to testify before the jury. The district court later issued an order denying Steak 'n Shake's motion in limine.

Corbin also moved to exclude Steak 'n Shake's statements of those interviewed during the harassment investigation. Corbin maintained that those statements constituted impermissible hearsay, and that if Steak 'n Shake did not plan to use the statements for the truth of the matter asserted, but rather to show that they conducted an investigation, it could be done through testimony. The district court granted Corbin's motion orally, without further analysis.

During trial, Corbin testified about the work conditions by describing her initial hiring interview with the manager, Shawn McLeish. After speaking with McLeish, another server told her Corbin would get hired because "Shawn only hires pretty blonde females and you are [a] pretty blonde." Finding this to be an odd comment, Corbin nonetheless accepted the position. Once hired, Corbin realized that several other male employees, especially those who later harassed her, shared managerial duties. Apart from McLeish and Simon, Will McCann shared supervisory duties as a step-in manager and would cash out his servers at the end of the night and check if their work sections were clean. Corbin first started experiencing sexual harassment a few weeks after starting her position. The harassment progressed from untying Corbin's apron to more aggressive touching and slapping of her behind. McCann also made comments about her breasts and body, saying that he would "tap that" and that he would "bend [her] over that table." On one occasion, McCann came over behind Corbin and Dean and smacked both of their behinds. The continued harassment caused Corbin to lose 30 pounds over the course of her employment at Steak 'n Shake.

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

Corbin testified that management turned a blind eye to her complaints about sexual harassment. McLeish, who was often present at work during these incidents, would ignore the complaints and walk around with a "creepy smirk." Simon, on one occasion, seeing Corbin bent over picking up boxes said, "isn't that a nice sight?" Corbin reported this incident to McLeish and called the corporate hotline, but nothing was done. Corbin also reported the harassment to another manager, Kayla Dehmann, who told Corbin "Will wouldn't do that."

Dean also testified that "every shift [they] worked together, there was always a sexual comment made against [Corbin]." Dean similarly faced harassment from the same male employees who would place their hands on her and smack her behind. Dean further testified that around March 2016, McCann "groped [her] breast in the walk-in freezer" when she went there to grab mac and cheese and got cornered. Dean testified that McLeish was present during most of the harassment incidents, and that she reported the walk-in freezer incident and the harassment incidents against herself and Corbin to McLeish. Dean also reported the incidents to Dehmann, who was allegedly dating McCann at the time, but did not "want to believe it because that was her boyfriend."

After a five-day trial, the jury returned a verdict in favor of Corbin on the Title VII and state law claims of hostile work environment, co-worker harassment, and awarded her $308 in back pay and $1000 in compensatory damages for mental and emotional distress. The jury also awarded Corbin $50,000 in punitive damages. The jury returned a verdict in favor of Steak 'n Shake on the Title VII and Ohio law claims of supervisor harassment and gender discrimination.

Corbin moved for an initial attorney fee award of $273,680.75. Using the "lodestar" calculation method that allows the attorney's fee to be multiplied in cases of exceptional success, Corbin requested a total attorney fee award of $547,361.50, with the multiplier factored. *See Blum*

*v. Stenson*, 465 U.S. 886, 898 (1984). Steak 'n Shake moved to alter or amend the judgment to remit punitive damages. Steak 'n Shake also argued that the district court should lower the attorney fee award to $59,937, stating that Corbin was not entitled to the multiplier and the hourly rates Corbin's attorneys charged were too high. The district court, exercising its discretion under 42 U.S.C. § 2000e-5(k), awarded Corbin a total of $92,977.75 in attorney fees and $9,316.41 in costs, but denied any prejudgment interest. The district court further denied Steak 'n Shake's motion to alter or amend the judgment to remit punitive damages. Steak 'n Shake timely appealed and Corbin cross-appealed.

## II. ANALYSIS

Steak 'n Shake argues that the district court erred in admitting Dean's testimony, excluding its investigatory statements, and denying its motion to remit punitive damages. On cross-appeal, Corbin argues that the district court erred in granting summary judgment to Steak 'n Shake on the Title VII and Ohio law claims of retaliation. Corbin also disputes the attorney's fees award.

### A. Motions in Limine

First, Steak 'n Shake argues that the district court erred in admitting Dean's testimony.

We review the district court's ruling on a motion in limine for an abuse of discretion. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 707 (6th Cir. 2013) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012)). "We accord the district court '[b]road discretion . . . in determinations of admissibility based on considerations of relevance and prejudice,' and we do not 'lightly overrule' those

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

decisions." *United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009) (quoting *United States v. White*, 563 F.3d 184, 191 (6th Cir. 2009)).

To prevail on a hostile work environment claim, a plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). If the harasser is a co-worker, to hold the employer liable, the plaintiff must show that the employer knew or should have known of the conduct and failed to take prompt and appropriate corrective action. *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001).

We have previously held that the factfinder can "consider evidence of other acts of harassment of which a plaintiff becomes aware during the period [of] his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008). In hostile work environment cases, we look at the "'work environment as a whole' rather than individual instances of harassment." *Smith v. Rock-Tenn Services, Inc.*, 813 F. 3d 298, 310 (6th Cir. 2016) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

Steak 'n Shake argues that Dean never clarified when she told Corbin about the harassment, and because there is "no evidence" that Corbin learned about the harassment during her employment, the testimony was not admissible. Based on the record, Dean confirmed that, as friends and co-workers, Dean and Corbin shared their sexual harassment experiences. Dean testified that "after the sexual harassment was going on, [Dean and Corbin] began to confide in each other" because "[the sexual harassment] was happening to both of [them]." Regardless of

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

the walk-in freezer incident, Corbin was aware of other incidents of harassment towards Dean while she was employed at Steak 'n Shake.

In *Hawkins*, the court held that a factfinder could consider acts of harassment against a third party when deciding whether the work environment was hostile. 517 F.3d at 335. Such evidence is also probative in establishing whether harassment was based on sex. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81 (1998). Dean's testimony could also be "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* As such, Dean's testimony was admissible.

Alternatively, Steak 'n Shake argues that just the freezer incident testimony should have been excluded. Steak N Shake did not preserve its objection to the specific freezer incident during trial, and has thus waived the argument on appeal. *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 286 n.3 (6th Cir. 2010).

Second, Steak 'n Shake argues that the district court erred in granting Corbin's motion in limine to exclude investigatory statements. Corbin argues that if the statements were being used to prove that Steak 'n Shake investigated Corbin's complaints, rather than to prove the truth of the matter asserted, Steak 'n Shake could testify that it conducted an investigation and could testify about when the investigation took place. Steak 'n Shake argues that the statements went to an essential element of Corbin's claim—whether Steak 'n Shake failed to take prompt and appropriate action to correct the harassment. This argument is without merit. Steak 'n Shake could have shown through testimony that it investigated and interviewed other employees. Indeed, Seikel testified about her conversations with employees. The jury could have properly determined, without knowing the content of the investigatory statements, that Steak 'n Shake investigated in

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

response to Corbin's allegations. As such, the district court did not abuse its discretion in excluding the investigatory statements.

## B. Damages Award

Steak 'n Shake argues the district court erred in declining to remit the jury's punitive damage award, and that the ratio of punitive damages to back pay and compensatory damages is in violation of the Due Process Clause of the Fifth Amendment.

We review the district court's denial of remittitur for an abuse of discretion, and we view the facts in the light most favorable to the plaintiff since she prevailed at trial. *Mid-Michigan Computer Sys., Inc. v. Marc Glassman, Inc.*, 416 F.3d 505, 509 (6th Cir. 2005); *Gibson v. Moskowitz*, 523 F.3d 657, 663 (6th Cir. 2008). The district court has the discretion to remit the damages verdict "only when, after reviewing all the evidence in the light most favorable to the prevailing party, it is convinced that the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the conscience of the court." *Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004); *see also Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996) (explaining that a trial court should not reduce an award unless it is (1) beyond the range supportable by proof; (2) so excessive as to shock the conscience; or (3) the result of mistake). "If there is any credible evidence to support a verdict, it should not be set aside." *American Trim*, 383 F.3d at 475.

Punitive damages are available in a Title VII claim only if the plaintiff shows, by a preponderance of the evidence, that the employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court in *Kolstad* noted that Congress intended "to narrow

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

the class of cases for which punitive awards are available to a subset of those involving intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999).

Courts consider the *Gore* factors to determine if the punitive damages award violated the Due Process Clause because it was grossly excessive: (1) the degree of reprehensibility of the conduct; (2) the ratio of punitive damages to actual, or potential, harm inflicted; and (3) other possible sanctions, civil or criminal, for comparable misconduct. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–85 (1996); *Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 643 (6th Cir. 2005).

Here, the district court issued an order, applying *Gore*'s three factors. As to reprehensibility of conduct, the district court described how Corbin was an underage female working with older, male colleagues who would allow their co-workers to harass her or join in on the harassment. Dean, another young female, was similarly harassed. The district court acknowledged that harassment was verbal, physical, and continuous, and that Corbin felt vulnerable and "scared" to work in such a hostile work environment. The district court found Steak 'n Shake's failure to take appropriate action reprehensible.

As to the second factor, the district court found that the punitive damages award was not unconstitutionally disproportionate. Lastly, the district court found the punitive damages award was appropriate when compared to other similar conduct. The district court noted that the award was below the statutory cap.

The statutory cap for combined compensatory and punitive damage awards, for Steak 'n Shake, as a defendant with more than 500 employees, is $300,000. *See* 42 U.S.C. § 1981a(b)(3)(D). The EEOC lists sister circuits that have held that in Title VII cases, punitive damages within the statutory limit under 42 U.S.C. § 1981a comport with due process. *See, e.g.*,

- 10 -

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

*Abner v. Kan. City S. R. Co.*, 513 F. 3d 154, 164 (5th Cir. 2008); *Lust v. Sealy, Inc.*, 383 F.3d 580, 590 (7th Cir. 2004); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 359 (2d Cir. 2001); *Arizona v. ASARCO, LLC*, 773 F.3d 1050, 1060 (9th Cir. 2014) (en banc). The EEOC argues that the federal statute's imposed cap is sufficient to comport with due process, and that *Gore* is inapplicable where the damages award is below the statutory cap. We disagree.

The *Gore* factors ensure that punitive damages are only awarded in the most egregious cases, which is what Congress intended with the federal scheme. The federal cap on punitive damages addresses only the limit of the awards, but does not determine if the award was proportionate. The Supreme Court has held that awards under $300,000 may still violate the Constitution, for example, if the ratio is in the double digits. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424–25 (2003); *see also Gore*, 517 U.S. at 582 ("[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award."). As such, the *Gore* factors play a key role in determining whether the punitive damages award is both reasonable and proportionate to the harm suffered.

In the context of this case, there sufficient evidence to show that punitive damages were warranted under § 1981a and not unconstitutional under the *Gore* factors. The Supreme Court has made it clear that a strong indicium of reasonableness of punitive damages is the degree of reprehensibility of defendant's conduct. *Gore*, 517 U.S. at 575. We consider the following factors to determine the degree of reprehensibility: whether (1) the harm was physical rather than purely economic; (2) the tortious conduct evinced an "indifference to or a reckless disregard of the health or safety of others"; (3) "the conduct involved repeated actions or was an isolated incident"; (4) and

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

the harm resulted from "intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.

Here, the harm that Corbin suffered was physical and emotional. The record shows she was slapped, touched, and subjected to derogatory comments at work. The harassment was not accidental or an isolated incident. The record also shows that Steak 'n Shake's management was repeatedly made aware of the harassment, but did not address or investigate the complaints. Even if Simon did not know of the ongoing harassment, McLeish as a step-in manager did, and a jury could have reasonably concluded that the management's ignorance of the harassment is the result of their failure to adequately investigate and respond to the complaints. Analyzing the factors together, we conclude that Steak 'n Shake's conduct is sufficiently reprehensible to justify the punitive damages award.

As to the ratio of the damages award to the harm inflicted on the plaintiff, again, the record shows that Corbin suffered emotional and physical harm. Moreover, even where the ratio is high, "[it] may [] be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore*, 517 U.S. at 582. Here, it is hard to quantify the emotional and physical harm that Corbin suffered.

Lastly, comparing the conduct here to other similar misconduct further shows that the punitive damages award was reasonable. We have upheld a $300,000 punitive damages award where an employee alleged a hostile work environment and sexual harassment. *See West v. Tyson Foods, Inc.*, 374 F. App'x 624 (6th Cir. 2010). Likewise, we found a $100,000 punitive damages award to be reasonable where an employee alleged racial discrimination. *Tisdale v. Fed. Express Corp.*, 415 F.3d 516 (6th Cir. 2005). In another race discrimination and retaliation case, we upheld the jury's award of $425,000 in punitive damages. *Jeffries v. Wal-Mart Stores, Inc.*, 15 F. App'x

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

252 (6th Cir. 2001). We have reinstated a (1) $75,000 punitive damages award where it was evident that the management of a company was indifferent to the sexual harassment of the plaintiff, *Parker v. Gen. Extrusions*, Inc., 491 F.3d 596 (6th Cir. 2007), and a (2) punitive damages award up to $300,000 where it was clear that the jury found that the company did not mitigate the discrimination through training and policies, *Fischer v. United Parcel Service, Inc.*, 390 F. App'x 465 (6th Cir. 2010). Based on the *Gore* factors, the district court did not abuse its discretion in denying Steak N Shake's remittitur motion on the punitive damages.

## C. Retaliation Claim

Corbin challenges the district court's grant of summary judgment to Steak 'n Shake on the retaliation claim. To establish a prima facie claim of retaliation under Title VII, a plaintiff must establish four elements: "(1) she engaged in a protected activity; (2) her 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). The last element "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Corbin states that she was fired because she complained about the harassment to Simon, and that her termination of employment was an "adverse action." A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008). If the plaintiff offers circumstantial evidence, as Corbin

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

does here, we analyze Plaintiff's retaliation claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this standard, Corbin bears the initial burden to establish a *prima facie* case of retaliation. If she succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to Steak 'n Shake to articulate some legitimate, non-discriminatory reason for its actions. If Steak 'n Shake satisfies its burden of production, the burden shifts back to Corbin to demonstrate that Defendants' proffered reason was not the true reason for the employment decision. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Based on the record, it is evident that, while it may have been miscommunication, Corbin initiated the termination herself. Corbin testified that she "was going to be starting to look for another job, and [wanted to] pick up shifts only." Corbin sent a message through the restaurant's internal messaging system, on March 29, 2016, asking to be taken off the schedule and stating that she would occasionally pick up shifts. During his testimony, Simon testified that he interpreted Corbin's message as a two-week notice and that she would just pick up days until the two weeks were up. When Corbin then showed up to work on April 2, Simon told her to talk to Genzen "because she thinks you put your two-week notice in." Even if we assume that Corbin reported the harassment and the harassment was known to Simon, Corbin failed to establish that this reporting of harassment was the but-for cause of removing Corbin from the schedule. As such, the district court did not err in granting summary judgment to Steak 'n Shake on the retaliation claim.

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

D. Attorney's Fees

Corbin challenges the district court's lowered attorney fee award. Corbin asserts that the award should have been $273,680.75, without the multiplier factored in. The total amount multiplied by two for success obtained equals $547,361.50.

We review the district court's judgment on attorney's fees for an abuse of discretion. *Cramblit v.Fikse*, 33 F.3d 633, 634 (6th Cir. 1994). We affirm the district court's judgment unless it was based on an "erroneous view of the law or on a clearly erroneous assessment of the record." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). "In light of a district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters, an award of attorneys' fees . . . is entitled to substantial deference.'" *Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (citation omitted).

Title VII provides that "the court, in its discretion, may allow the prevailing party, [in litigation under Title VII] . . . a reasonable attorney's fee . . . as part of the costs[.]" 42 U.S.C. § 2000e-5(k). We rely on precedents involving attorney's fees without regard to whether they involved Title VII or some other federal statute, because the same standards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7 (1983).

A district court is required to "begin[ ] by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). The reasonable hourly rate accords with the "prevailing market rate in the relevant community." *Blum*, 465 U.S. at 895. And the reasonable number of hours will not include "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434.

Case Nos. 20-3519/3553, *Corbin v. Steak 'n Shake, Inc.*

Here, the district court outlined in detail, applying the "lodestar" factors, why a lower attorney's fee is warranted. Corbin submitted 669.52 hours of billing records, stating hourly rates of $475 and $550 for the two attorneys. The district court, relying on the hourly rates listed by the Ohio State Bar Association and caselaw, determined that $350 per hour was a reasonable rate for an experienced attorney in Central Ohio. The district court thus reduced the hourly rate from $550 to $350 for one of the attorneys. The district court also found that a rate of $275 is reasonable for an attorney with eleven years of practice, and reduced the rate from $475 to $275 for the second attorney. Applying the adjusted rates to the hours billed, and also factoring in a reduction of hours related to trial preparation, the district court awarded $92,977.75 in total. The district court also factored in that the case did not raise "novel or difficult questions, nor did it require exceptional skill, time or labor on the part of plaintiff's counsel." The district court's judgment is grounded in a thorough review of the record, and the reduced award was justified. We find that the district court did not abuse its discretion in reducing the attorney fee award.

### III.

For these reasons, we **AFFIRM** the district court's judgment as to both appeals.